AUSTIN *et al. v.* McLAURIN.

FLASH *et al. v.* SAME.

*(City Court of New York, Special Term.   June 4, 1888.)*

ATTACHMENT—PROPERTY SUBJECT TO—PROCEEDS OF LIFE INSURANCE POLICY.

The proceeds of a policy of life insurance for the sole use and benefit of the wife of the insured, and, if she be not living at the time of his death, for the benefit of his children, are, under the provisions of Laws 1840, c. 80, and Laws 1858, c. 157, permitting married women to insure the lives of their husbands, the net amount of such insurance to be paid to the wife if she survives the husband, and if not, to the children, free from the claims of the husband's creditors, exempt, after the death of the insured, from levy under attachments in favor of the widow's creditors; and the service on the company of certified copies of such attachments in the form prescribed by Code Civil Proc. § 649, subd. 3, therefore creates no lien or charge on the fund, but such service will be set aside.

At chambers.  Motions to vacate attachments.

Actions by John A. Austin and others against Viola B. McLaurin and William Flash and others against the same, in which plaintiffs obtained attachments which they sought to levy on the proceeds of a certain policy of insurance.  Defendant moves to vacate the attachments, or to modify the same, or the operation thereof.

*Edward Russell,* for the motion.   *Gruber & Bard,* opposed.

McADAM, C. J.   On the 15th day of April, 1886, the New York Life Insurance Company issued a policy, whereby it insured the life of William McLaurin to the amount of $2,000 for the benefit of his wife, Viola B., to and for her sole use and benefit, in conformity to the statute, and if she be not living at the time of his death, then for the benefit of his children.   The said William McLaurin departed this life February 24, 1888, and the insurance company is ready to pay his widow the amount of said insurance, but declines to do so until the levy thereon hereinafter mentioned is in some form released.   The plaintiffs herein, on March 29, 1888, obtained attachments in this court against the property of the defendant, as a non-resident of the state, and under these attachments the sheriff has attempted, in the form pointed out by the Code, to obtain a lien upon the fund, by the service of certified copies of the attachments, with notices showing the property attached.   Code, § 649, subd. 3. The form is all right, but the defendant claims that the power of the sheriff in levying under an attachment is limited to property, not exempt by law, which can eventually be applied to the satisfaction of the judgment, (Code, § 644,) and the question to be determined is whether the insurance moneys attempted to be levied on are exempt from these proceedings, so as to make the attempted levy of the attachments thereon ineffectual, and the service in consequence vexatious and oppressive.

Under the Acts of 1840, c. 80, and 1858, c. 187, as interpreted by the courts, it would seem that the proceeds of the policy cannot be reached by the creditors of Mrs. McLaurin, and that they are to be treated as property exempt from seizure on attachment or execution.   *Leonard* v. *Clinton,* 26 Hun, 288; *Brunner* v. *Cohn,* 86 N. Y. 11; *Smillie* v. *Quinn,* 90 N. Y. 497; *Baron* v. *Brummer,* 100 N. Y. 372, 3 N. E. Rep. 474.   The insurance effected by the husband for the benefit of his wife and children is, by the humanity of the law, preserved to her to the exclusion of his or her creditors, and this upon grounds and for reasons which have legislative sanction.   At all events, whatever may have been the real intention of the legislature, as expressed in the acts before referred to, it is settled beyond question, by a long line of decisions, that the proceeds of a policy on the life of a husband for the benefit of his wife cannot be reached either by his creditors or by hers, either before or after the death of the husband.   *Eadie* v. *Slimmon,* 26 N. Y. 9, and *Barry* v. *Insurance Co.,* 59 N. Y. 587, were among the first cases construing the

act of 1840, and the principles there laid down have been steadily broadened by the courts until now. As said in *Smillie* v. *Quinn, supra*, at page 497 of the report: "She [the wife] could take the money upon the policies and give it away, and she could renounce all claim to it, and allow any person, under her assignment, to receive it." And again, at page 498, the court says: "As she was not in a position to assign the policies to her creditors so as to absolutely cut off her right, her creditors could not take them so as to bar her right, and therefore it was no fraud upon her creditors for her to make the assignment at that time to her children. It was like the disposition of property exempt from execution, of which creditors cannot complain." In *Baron* v. *Brummer*, the court says, (100 N Y. 375, 3 N. E. Rep. 475:) "Under these various provisions [of the Statutes] it was the intention of the legislature, as settled and determined in the cases already cited, that such policies should not be subjected to the lien of creditors either of the husband or the wife,— as to the former, by the express words of the statute; and as to the latter, by the determination of the courts,—and there is no ground for claiming that either the policy, or the proceeds which might arise from the same, before such payment is made, are subject to be reached in advance by a creditor, or that the policy can be assigned and held by the decree of a court of equity for the benefit of creditors until it becomes due and payable." Whether the proceeds of a life policy can be taken for a debt of the widow contracted before the husband's death is the only open question in this case. The contract out of which the proceeds arise is one authorized and regulated by statute. Its provisions are special and peculiar, and look to a provision for a state of widowhood, and for orphan children, and it would be a violation of the spirit of those provisions to hold that the fund intended by the husband in his lifetime for the support of his widow and orphan children might, immediately upon his death, be seized and taken by the existing creditors of his widow, and applied to the payment of their demands.

Such a construction of the contract would convert his life insurance into a fund for the payment of his wife's existing creditors, and divert it from the contemplated future provision for the support of his widow and orphan children. The law cannot be interpreted so as to defeat the very purpose of its humane provisions, and to frustrate the evident design of the husband in making pecuniary provision for his widow and orphan children which was to become of service to them as a means of support only after he had departed this life, and could no longer provide for them himself. As the policy was exempt from the claims of creditors before his death, the proceeds thereof were equally exempt from such claims after his decease. *Leonard* v. *Clinton, supra*. Any other construction would imply that the husband had more concern about the payment of his wife's creditors after his death than he had for the future welfare of his widow and orphan children. This won't do. Exemption laws are not designed to protect creditors, or to advance their interests, but to furnish protection against their writs and actions. They are remedial in their nature, and must be liberally construed to advance their spirit and purpose, which are in the interest of humanity to protect families from improvidence and distress. In *Andrews* v. *Rowan*, 28 How. Pr. 126, it was held that a cause of action, for the conversion of personal property exempt from levy; did not pass to a receiver appointed in supplementary proceedings. Judge GROVER in that case said: "The statute exempting certain property of the debtor from execution should be fairly construed to enable the debtor to enjoy such property." He cannot have much enjoyment of it, if the property is taken or its proceeds are diverted from the use of the person by whom the property was to be enjoyed. In *Tillotson* v. *Wolcott*, 48 N. Y. 188, it was held that a judgment recovered by a debtor against his creditor, for an unlawful levy upon and sale of exempt property, cannot be reached by the creditor through supplementary proceedings; that the judgment represents the property for the value of which it was

recovered; that the proceeds of the judgment will be protected as exempt property; and an order made directing the receiver to return the proceeds of the judgment which he had collected was affirmed. The court in that case said: "The court will not permit its officers to exercise their power illegally or oppressively." Page 191. Upon general principles, it would seem that, if the policy is exempt, its proceeds are also.

Under the acts of 1840 and 1858, *supra,* and the Revised Statutes, (6th Ed. vol. 3, p. 161, § 89,) and the authorities cited, it is clear that the proceeds of the life policy are exempt from levy under the attachments issued herein; and that the service of certified copies thereof, in the form prescribed by the Code, does not create a lien, or even a contingent or conditional charge thereon, nor would such service furnish the insurance company with a defense to an action by the widow to recover the sum which it agreed to pay on the decease of her husband. The facts are conceded, so that there is no issue to be tried that could be submitted to a jury for determination, and it would seem to be a species of barratry to turn the parties over to an action to decide a pure question of law, which can be determined here and now, as well as at the end of a new and expensive litigation. These views make it unnecessary to pass on the effect of the assignment of the cause of action for the insurance, made after the service of the warrants of attachment, because, if the attachments created no charge upon the proceeds of the policy, the plaintiffs cannot attack its validity or effect, as it neither aids nor prejudices them. Whether it is valid as to the widow may depend upon whether she elects to attack it, a matter of no concern here. Suffice it to say that, if the assignment is valid, the assignee succeeded to the rights of the assignor; if it is not, he did not; and as both assignor and assignee unite in this application, the question of the assignment is not germane to any question to be decided now. Code, § 682; *Printing Co.* v. *Hart,* 85 N. Y. 500. From these facts, and the views expressed, the court decides that the application, in so far as it seeks to vacate the attachments, must be denied; but the attempted levy by the sheriff on the proceeds of the life policy will be declared ineffectual, as such proceeds are exempt from levy or seizure under said writs; and the service thereof on the life insurance company will be set aside upon the ground that their continuance (1) would have a tendency to delay the payment of moneys which the laws of the state intended should go to the widow without hinderance or interference by creditors; (2) that the impounding of such moneys would tend to impair the policy of the act exempting the same from seizure; (3) that such obstructions would be of no benefit to any one, and therefore vexatious and oppressive, and amount in law to an abuse of process, which courts cannot knowingly permit. Enter order accordingly, without costs.